The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw an eye and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Be seated. We welcome everyone to the Fourth Circuit Court of Appeals today. We look forward to the arguments of counsel in the case of Sims v. Labowitz. Ms. Sokol, we're pleased to hear from you. Good morning, Your Honors. My name is Maxwell Sokol. I'm here with Victor Glassberg on behalf of the plaintiff appellant, Trey Sims. I will be arguing the direct portion of the argument and Mr. Glassberg, the rebuttal. Good to have you here. Thank you. This case, as Your Honors are aware, presents stark, disturbing facts and preliminarily forces me to talk about things that I ordinarily would not in a federal courtroom, but such are the facts of this case. In this case, plaintiff appellant was a child at the time and forced to expose himself and manipulate his penis while a police officer took pictures on his personal cell phone. The purpose of the pictures... You say he was a child. He was 17 years old. That's correct. A minor. He was... The purpose of the pictures was to compare them to sex being charged and investigated as child pornography. So the purpose of the pictures was to mimic and duplicate child porn so it could be compared to what was being investigated as child porn. And then later, when someone realized that you cannot compare an unaroused penis to an aroused one, fruitfully, he threatened plaintiff appellant with an injection to forcibly procure an erection. From that set of facts, on appeal are three claims. The federal statutory claim for forced participation in child pornography, a Fourth Amendment unreasonable search claim, and a Fourteenth Amendment... I have a question about the threat. So the threat wasn't made directly to the minor, was it? It was made to his lawyer? That's right. He was represented at the time. Does that somehow make a difference in this case? I don't think it does, Your Honor. He was represented at the time by his criminal defense attorney, so I'm not sure that contact with him directly even would have been appropriate on the part of the officer. So the fact... What is your best case for the proposition that a threat to a police officer made indirectly to a client through a lawyer is a violation of substantive due process? In my research, this is a novel issue. I have not come across a case dealing with the viability of a threat under the substantive due process clause. I think that given the outrageous nature of the threat and the bodily intrusion of the threat, that is what brings it within substantive due process protection. The injury here is mental. I submit that that goes exclusively to the quantum of damages available to Trey rather than the existence of a cause of action under that amendment. Is that what was alleged in the complaint, that there was mental anguish and distress as a result of the threat? Yes, sir. Yes. Did you get any further? Is this still at the pleading stage? This is all at the pleading stage. So we've done a little bit of discovery, but we are all at the pleading stage. You did do discovery? Discovery was propounded on the defendant, yes. It's a little difficult because he is deceased now, so the information is limited without the further enhanced discovery. So I'd like to start with the federal statutory claim because I believe it has implications for qualified immunity. So the statute, the federal statute, prohibits forced photos of sexually explicit conduct, which is defined, among other things, as masturbation or lascivious exhibition of the genitals. Those are separate factors that may be sexually explicit conduct under the statute. So here, plaintiff appellant was forced to touch and manipulate his penis in order for pictures to be taken. So that is black letter falling within the statute, being forced to create pictures of himself masturbating. If the detective had simply asked the SU client to drop his drawers and simply take a picture  Not under the masturbation portion of the statute, but I would say that there is a claim under the lascivious exhibition because, again, the common sense principle is that he is duplicating and replicating child pornography. That's the purpose of the pictures, is to compare them to sex being investigated as child pornography. This is obviously an unusual case, but officers sometimes, law enforcement officials, may sometimes be required to take a picture of someone's sexual organs for purposes of investigation. So how would that be any different? In those cases, there is no duplication of child pornography or underlying child pornography that is being sought to be replicated. In those cases... Maybe I'm not understanding. What's the child pornography that's being sought to be replicated here? So his criminal prosecution arose out of him sending consensual lascivious pictures between him and his girlfriend. Right. And the question was one of identity, right? So if the officer had simply taken a picture of your client's penis without an order to manipulate or otherwise touch or engage in any of that activity, would we have a constitutional violation? A constitutional violation, yes. A statutory violation. A statutory violation, I'm not sure. I'm not sure because in that case, he's not trying to replicate the pornography that he's investigating. Why would we have a constitutional violation if, in fact, this was a legitimate investigative process technique? So it would still be an unreasonable search, in my view, because there's never been an allegation that he had some unique identifier such that taking a picture of his penis would fruitfully help the investigation. And all this was done pursuant to a duly issued search warrant. That's correct. That's correct. As a duly issued search warrant, that was approved, as far as the officer was concerned, or the seeking of it, was approved by the prosecutor, which I'll call here in Virginia the Commonwealth's attorney. And then an affidavit made seeking a search warrant by the police officer laying out what he said was the probable cause, the basis for probable cause, and the issuance of a search warrant by a Virginia judge. A Virginia magistrate, Your Honor, yes. Well, is that not a judge? No, in Virginia, magistrates do not need to be lawyers. But they're members of the judiciary, aren't they? Yeah, they're magistrates, so they're members of the judiciary. We've got magistrates in the United States court system. Well, they call themselves magistrate judges, actually. They call themselves magistrate judges under federal law. Anyway, they're members of the judiciary here in Virginia. It's the bottom of the rung, certainly. But there's a search warrant issued here, correct? That's correct. And then the search warrant, I guess, was issued or signed by the magistrate and tendered to the clerk or tendered to the officer. Do you know which was? I'm sorry? Somebody. It got from the judge to the officer. The officer applied directly to the magistrate. Well, he applied, but then the judge signed the search warrant. And it got from the judge to the officer, either through the clerk or directly to the officer. That's right, Your Honor. And then the officer executed it. Yes. Did he do anything that was not called for in the search warrant? So he did. So the search warrant authorized pictures to be taken, to be used as comparators to the underlying sex. Pardon? The pictures authorized under the warrant were specifically so that they could be compared to the underlying sex being charged as child pornography. Detective Abbott, upon executing the search warrant, saw Tray's unaroused state and then, on that basis alone, taking pictures of a male genitalia that is not going to be compared fruitfully to the one under investigation, on that basis alone, that is outside the scope of the search warrant. Also, the manner of the execution of the search warrant is a separate basis for a Fourth Amendment claim here. I understand all that, but did he do anything that was not directed or commanded? Matter of fact, that search warrant says to any authorized officer, you are hereby commanded in the name of the Commonwealth to forthwith search the following place, or thing, either in day or night. It was a nighttime warrant, even. I mean, that's special circumstances in the federal system. I don't know what it is over in Virginia. Your Honor, we do not. And it tells him what to do. It names your client, gives his date of birth, which is redacted here, describes his height and weight, for the following property, objects, and or persons. Photographs of the genitals, hands, or other parts of the body that will be used in comparison in recovered forensic evidence from the victim and suspect's electronic devices. This includes a photograph of the suspect's erect penis. That's what he was commanded to do. You are further commanded to seize said property, persons and or objects, if they be found or produced, and to produce before the Prince William County Circuit Court an inventory of all property, persons, and or objects seized. That's what he was commanded to do by the court. Your Honor, we do not. And so what he did, he followed up on that warrant and did these things. And then the officer made a return. Right? And filed it into court. That's correct, Your Honor. The following items were seized. Photos. Those were the items described. And it's signed and dated and all that. So what was done here was pursuant to court order. We do not dispute, Your Honor. How do you get around a court order? What's an officer supposed to do if he gets a court order? The Mallee v. Briggs line of cases is... Answer my question. What does a police officer do when he's handed a court order? In the ordinary course, an officer absolutely is commanded and under an obligation to perform as the court says he or she should. What circumstances did the officer disregard a court order? We are not claiming that he disregarded a court order, Your Honor. Well, you want him to. That's correct. You're saying he shouldn't have complied with the court order. And under Supreme Court precedent, the Mallee v. Briggs line of cases, which is quoted at the opening brief at 34, we find it reasonable to require that the officer applying for the warrant will minimize the danger of an unreasonable search or whatever it is, what have you, by exercising reasonable professional judgment. And that is exactly what did not occur here. He asked the magistrate to allow him to commit a crime. So it was the asking for the warrant that was what was wrong. That was itself unreasonable. A magistrate cannot offer it. I'm just trying to pin you down on that. It's the seeking of the warrant. And so you had three culprits here, the officer, the Commonwealth's attorney, and the judge. Three burdens do not make a right, Your Honor. Is that correct? They all said, go ahead. The only one that you want to hold liable is the officer. So the magistrate is absolutely immune. And he's absolutely immune. And the prosecutor is absolutely immune. That's correct. So, I mean, if I had my way, I would hold them all liable. But that is not how the law operates here. But the officer is the only one that's here. And you've got an officer that has a warrant. And you say he should have disregarded it. A magistrate cannot authorize violations of the law, Your Honor. That the officer should be prepared to disregard court orders. And that's a big step for a court to take is to say that it's all right for. It would not be unprecedented, Your Honor. Let me finish. Let me finish. I'm sorry. That's a big step for a court to take, this court, is to authorize police officers to wantonly disregard the issuance of court orders. I mean, courts can't really enforce orders. We issue them and we expect people to comply with them. And that's period. End of story. But you say, and you're interrupting me again. And if we ask you questions, you answer and you listen until we finish answering the questions. You need to do that. And I'm talking a lot. And I apologize to you and everyone for that. But, you know, this is important to me. I have a problem with how we get past the proposition that officers are commanded to comply with court orders. And you're saying that this fellow could be held personally liable. You want us to make a precedent that this fellow could be held personally liable. Personally liable. Not the county of Prince William. Not the police department or anything. But personally liable for failing to disregard a duly issued search warrant. Now you can... I see my time is up. However the question, you want to frame it, say whatever you want to say. And don't you worry about the red light. Okay, thank you. And I'm going to ask you a question that you may wish to address on rebuttal if you want to reserve your time. My problem with your case essentially is in the clearly established law prom. What clearly established law is there that a police officer is required to ignore a warrant issued by a third party, neutral third party? Where is there clearly established law in the Fourth Circuit of the U.S. Supreme Court that he was required? Because isn't that what needs to be shown in terms of violating a clearly established right to show that it is clearly established that he was required to ignore the warrant? And so if you can think about that maybe and address that on your rebuttal. If I may, I'm comfortable addressing those points right now. You can address them right now. And Judge Keenan framed it a lot better than I did. So the clearly established... I'll incorporate what I said into her question. So the issue of the warrant is whether a reasonable officer would have believed that he was requesting something lawful. That is what the question surrounding the warrant is. That's the purpose of putting the case in front of a third party magistrate. And the magistrate is arguably neutral and detached. That's correct. He's neutral and detached. And there's no evidence in this case that the magistrate was not neutral and detached. So where is the law that put the officer on notice that he had a duty not to execute the duly authorized warrant? So, Your Honors, as I understand the issues in this case, the clearly established prong is going to the right that we allege was violated. It's a clearly established right that he should have known he would violate. The warrant is a separate issue. How does he know that he's violating the privacy of this young man? And you're saying that his privacy... And they're shocking facts. There's no question about that. But what about the law put him on notice that he was violating this right? That there needs to be a compelling governmental safety, penological, some kind of law enforcement need for the intrusion of privacy. That's the Bell v. Wolffish balancing in Logan v. Shealy. That's on the face of the warrant. That's on the face of the warrant. The judge said so. And it would certainly not be precedential in this circuit to say that sometimes officers cannot rely on an unreasonably requested warrant. I will reserve the rest of the time for Bob. You can go ahead and answer these questions. I told you not to worry about that red light. Sure. You can't get out of answering Judge Keenan's questions. I was not trying to. You make a good point. The clearly established right is the right to his bodily integrity. But the officer, our case law talks about notice. Does it not? And the officer has to know. And in this case, the facts are so unusual, the officer, it seems to me, would have to know that notwithstanding the issuance of a warrant, and the fact that the warrant was notified, detached and neutral magistrate, he had an obligation not to execute the warrant because of the serious personal right that was being invaded. The case law that says that. The obligation was not to request the warrant. And that's the Mallee v. Briggs line of cases, that we are going to put the onus on officers to not request something that's patently unreasonable. In this case, violates child pornography law. So that is where he was on notice. And then the clearly established right, I submit, was clearly established by the Logan v. Sheely line of cases, saying that you need some compelling governmental need in order to override someone's undeniable privacy interest in their clothed genitals. So the claim, then, is that he should have known better than to ask for the warrant. That's correct, Your Honor. So he shouldn't have made the affidavit. With respect to the warrant portion of why it can be disregarded in this case, that is the argument, yes, Your Honor. The magistrate is supposed to be the shield against intemperate police activity, isn't it? I mean, that's how the whole system is designed. Absolutely. You can have a very, a police officer who is, you know, focused on doing whatever it takes, perhaps, to solve a case, and the magistrate is neutral and detached and says, well, wait a minute. There are things you can do. There are things you can't do. And certainly there is. What's wrong with asking this neutral person, is this out of bounds or is it in bounds? What's wrong about that? In the ordinary course, nothing is wrong with that. And quoting again from Mallee v. Briggs, it is possible that a magistrate working under docket pressures will fail to perform as a magistrate should. Here in Virginia, where magistrates do not have to be lawyers, that has added significance. Here we are not going to say two wrongs make a right. That is what the Mallee v. Briggs and its progeny line of cases stands for. So you think it should apply something like strict scrutiny to the issuance of a search warrant by a non-lawyer magistrate in Virginia? You want a principle? I don't think that's the principle I'm trying to put forward, John. I'd like to accept the fact, the proposition that a search warrant issued by a judge is a court order that has to be complied with. I mean, I've been around the law here for an awful long time. And that's the principle that otherwise you've got anarchy. I mean, the system depends on those involved in it complying with court orders. We issue them all the time up here, and we don't have much enforcement mechanism, but we have people that respect it. We issue court orders, and they're complied with. We know they're going to be complied with. Search warrant's just like that. They issue a search warrant day or night, nighttime. I mean, they issue a search warrant for nighttime. That authorizes, most of the time, it's for homes or something. They knock down doors and go into people's bedrooms and do whatever. Do things worse than this. Go in there with guns drawn. These aren't small matters. We also, Your Honor, cannot immunize officers just because they have a warrant. But you have a judge in between the officer and the public. Here you've got a prosecuting attorney as well, but he approved it for the officer to go do it, and then the officer did it, and then they went to a judge. And we complain all the time, because most of these things come up here, where the officers didn't get a warrant. They stop somebody on the street or they stop somebody on the highway, or sometimes they break in houses or go in homes without warrants, because they're chasing somebody, or they claim extra circumstances for warrants. And we're complaining with the fact they didn't go to the magistrate. We want them to go to the magistrate, because the Fourth Amendment says, right, warrants, get warrants, get warrants. We always want them to get warrants. But we never, because I know I've told them to disregard them after you get them. So in this case, and acknowledging that a warrant is prima facie evidence, and in the ordinary course it will be evidence, dispositive evidence of reasonableness, acknowledging that, it would not be precedential in this circuit, and it has been long established that warrants are not going to immunize officers in every instance. So that's one point. Even if you have a warrant as an officer, the manner in which the search is conducted is always subject to Fourth Amendment reasonableness analysis. Here that is a separate basis for the Fourth Amendment claim, as well as the fact of the search itself. So here he lied in order to get Trey isolated via a secure detention order. He lied? That's correct. He lied in the affidavit? Yes. Now where in the affidavit do you say the lie is? So I'm not sure that the secure detention... Which page is it on? And give me the part of it you say is a lie. Is it on page four? Paragraph four? I'm sorry, are you... I want to know where the lie is. Of the complaint, Your Honor? Your Honor, are you asking about the complaint? No, I'm looking at the warrant. I'm looking at the affidavit for the warrant. I'm looking at the affidavit for the warrant. It was not the affidavit for the warrant. It was the affidavit... It's on page 75 of the supplemental appendix. It was the affidavit for the secure detention order, which in Virginia is the means by which an officer can seize a child immediately. We're talking about a search warrant. There was an affidavit and a search warrant. One of them executed, and the material by its constituting probable cause are spelled out there. I may have been unclear in what I was referring to. Back off that. You abandoned that. No, Your Honor. I may have been unclear in what I said he lied to procure. There is no allegation that he misrepresented to a magistrate anything that he was going to do with respect to the search warrant. In Virginia, there is a secure detention order is the mechanism by which an officer can immediately seize a child and take him to a juvenile detention center. To what extent is your case premised on the fact that this young man was a juvenile? Would a constitutional violation have occurred in this case had he been an adult? What's your position on that? You know, because he is a juvenile, his privacy interest is enhanced under the law. Sure. Would a constitutional violation have occurred regarding the invasion of his personal integrity had he been an adult? I believe it would have, Your Honor. And that's because here there is no unique identifier that he was seeking to find by virtue of the search. So our law is very clear that we have a very enhanced privacy interest in our nude bodies. So it's a balancing. How much of your case is based on the fact that he's a juvenile? I guess that's what I'm trying to get at. Well, certainly the federal statutory claim. Constitutional violation. I think that... I don't know a percentage or how much... It doesn't sound to me like it wasn't controlling. I don't think it's controlling, Your Honor. I think that it does weigh... You said it would be a violation even if he was an adult. So the fact that he's a juvenile doesn't make any difference. The privacy... I think you've agreed that the age is irrelevant. I do not think that the age is irrelevant, Your Honor. I think that the age goes to the enhanced nature of his privacy interest. Not controlling. Not controlling in the sense that there may be a violation under the Constitution if it were an adult. So it's being relevant but not dispositive. That's my position, yes. Unless Your Honors have any more questions, I will let my... You have some time saved for your colleague. We'll give him his time. We only got one case here today, and it's interesting. And it's important. And so we're going to let you have your say-so. Thank you, Your Honor. Ms. Judkins? Yes, sir. Julia Judkins for the estate of Detective Abbott. It's important to recognize, yes, their primary... If we're talking about Count 2A, whether or not it was reasonable for Detective Abbott to seek the warrant. Well, let me ask you. Yes. Since Judge King asked this question of your opponent, is it your position that an officer can rely on a order regarding a search or seizure no matter how facially unreasonable that order may be? I recognize the line of cases that say that an officer should not seek a warrant if a reasonable officer... No reasonable officer would, under the facts, ask for the warrant. Isn't that the allegation here? But it's not supported by the record. And for that reason, we put... You think this is a run-of-the-mill search and seizure case? No, I don't think a run-of-the-mill. But I do say that this falls within the parameters of Torshinsky, that case, and what Judge Hilton ruled on at a minimum qualified immunity. And that's because... Detective Abbott to do this, number one. That's conceded. They did not appeal that. So, again, no matter how unreasonable that directive is, an officer is required to comply with that directive? No. It's one prong of this inquiry under Torshinsky where the fact that you've had two... You've had... Actually, three. You have the Commonwealth attorney telling him to do this. You have the magistrate issuing it. And you have a district court that has affirmed it. But more importantly, in this case, we have the affidavit. But we don't give any discretion to the district courts ruling, do we? No. But in Torshinsky, the Fourth Circuit said that is something to take into consideration. I mean, it's important... Noteworthy that two different judicial officers in separate proceedings determined that the officer demonstrated probable cause. Now, that was an arrest. Let me back up just a moment. I want to be sure I understand the premise here. So, you're conceding that it is clearly established that a police officer cannot immunize himself or rely on a facially unreasonable warrant to eliminate liability in a broad sense. In the broad... Whether or not it applies here is a different question. But that's clearly established, isn't it? Yes. Facially invalid warrant. But here, in this case, we have the affidavit. So many times in Virginia, officers go and just swear to facts. You have the affidavit. You also have, as a matter of record, the juvenile court pleadings that underlie this. What is the significance of the affidavit? The affidavit states very specifically that he is looking for... They have recovered evidence on the victim's phone and on the suspect's phone. They've recovered evidence that doesn't show face or head. Doesn't show. Shows hands. Actually shows him manipulating his organ in these photographs. And that's what they're trying to replicate. And that's what's alleged. It's alleged throughout the second amended complaint. The purpose of taking the photographs was to try and obtain... Basically, is this exactly what is depicted or close to what's depicted in the photos we have from the phones? So he... Let me ask you this. And this is an extreme question, I admit. But let's say that the photo had been of this young man inserting an object into his rectum. Are you suggesting that the police officer would have been within his rights to replicate that activity? No, I'm not suggesting that. So where is the line to be drawn? His hands. That is clearly in the affidavit. What is it about the hands that makes that the example I've just given? Because the magistrate has available the... I'm trying to find a line to be drawn. His hands are touching... Where is the line between reasonable and not... Because the fourth amendment obviously requires a reasonable. Yes, it does. And you have to balance. We're not... In the cases that have been relied on, for example, we're not puncturing his skin. We're not asking him to insert anything in the example you gave. We're not trying to surgically remove something from him. You're asking him to perform a sexual act, though. Well... Sorry. Where is the case authority that talks about the reasonableness of having the police require somebody to perform a sexual act in the course of their investigation? Well, I don't believe that's actually alleged. They do not specifically allege that the police officers required him to masturbate. They don't. Replicate. Simulate. How are they able to obtain a photo of his erect penis? In fact, if you look at the warrant, that's not what they were asking for. The actual warrant, which is 74, it was Exhibit 28 presented in the lower court. If you look at page 3. Page 2? Page 3 of the actual warrant. Page 3. Oh, 3. Page 3 is the affidavit. Well, it's... It's not the warrant. It's the affidavit under paragraph 3. The things or persons to be searched for. Crossed out as this includes a photograph of the suspect's erect penis. That's crossed out on the affidavit, but it's on the warrant. It's on the warrant. It is, but it wasn't sought by Detective Abbott. Pardon? It wasn't sought. That particular thing is... But the judge issued it. He did. But... He did. But Detective Abbott, what is alleged, is not that he required him to masturbate. It's his hands touching his organ. I'll use the word organ. In the same manner as depicted in the photographs. As depicted in the photographs. There is... That's what's... And that's what he said he wanted to do. That's what the affidavit says. We need photographs of his hands. To compare with already obtained evidence. The photographs are needed. Now, what are you referring to now? The page 4 of the... Page 4, paragraph 4? Yeah, one page of the record. 75. It's 75 of the supplemental appendix. Yes, sir. Does that help you? Yes, sir. It does. And it's page 4 of the warrant affidavit and it's paragraph 4 on page 4. Right. It's in lines or not in lines. These photographs are needed to document and compare with the already obtained evidence. Additionally, in some of the video pictures, the head of the subject is not visible, but the erect organ, hands, and waist of the subject are visible. Documents are sought to verify the age, et cetera. That was the point. And that is consistent with what they've alleged. They have photographs of this young man as Exhibit 1, which is the juvenile complaint, describes himself fondling his organ. And that's what they're trying to replicate. And that's evidence. And I do think it's important that it's a fact now that the prosecutor directed him to do this. This goes to qualified immunity, defense, as well as whether there's a constitutional violation. The fact that he told the young man who was two months away from being 18, that's another factor I think that the courts should analyze. It matters that he's a juvenile. It doesn't matter that he was two months away from being 18. Well, I think when the courts, I think if this case were before, and it should be the same here, just like the Bullitt case with Judge Winston's son, who argued that many years ago, and just like the case with the prisoner, who they wanted to go in and remove implants, there's a balancing test. So, would this case be different if the young man was eight years old, seven years old? Yes. It probably would. Why isn't that an appropriate factor to look at in balancing the intrusiveness? Number one, didn't take place in a public place. It was at the juvenile detention center. Any argument about Detective Abbott lying, and they're relying on the detention order, that's gone. They didn't appeal that. They have withdrawn that appeal, and they cannot make arguments throughout which they didn't allege. They never alleged in the Second Amendment complaint that my client obtained the detention order for the sole purpose of getting these photographs. They've put that in the brief, but that's not an allegation in the pleading, and they shouldn't be allowed to argue that here. So, then you have these balancing. Does it involve injury, physical or mental? That's okay. But you have a young man who not only did this once or twice, but the record shows he did it multiple times, even after the mother told him, stop doing this. So, they're trying to get evidence to obtain a conviction so that they can do just exactly what ultimately occurred. This young man was prohibited from having any contact with the young lady and prohibited from doing this, and he didn't for another year, for a year, and presumably not since. Who knows? I don't know how the facts regarding repetitive behavior, how that impacts at all the relevance of the police officer's actions. Either they were reasonable or they were not. Why does it matter how many times he did this or the fact that he didn't stay away from the victim? Because it was a legitimate law enforcement purpose to get the evidence. I don't dispute that. A crime was committed. There was a legitimate law enforcement purpose. The question is, how far may these officers go in securing this evidence? And I think that it was reasonable to ask him to replicate the position of his hands, as shown in the photographs and the videos that were obtained from the electronic devices they had. Was it also reasonable to have him fondle his penis in the process? They don't specifically allege that. They talk about simulating in order to replicate, but they also allege the reason. And the reason was his hands were on his organ in the photographs and it was in different positions. And that's what the officers wanted to replicate, to show that they have the photographs and this, and they can see his hands, they can see everything else, and this would be, maybe it goes to the wait, but it would be admissible. The fact that they chose later not to use the photographs doesn't mean they were a non-legitimate law enforcement tool to obtain evidence that would secure a conviction. Secure a conviction. It seems to me that the stronger part of your argument would be that there wasn't a clearly established constitutional right. Because, I mean, it really is shocking, you know, what occurred in this case. I think, and I understand your burden of advocacy, but the factual situation is really bizarre from my perspective. And could you address why whatever constitutional right the young man had that was violated was not clearly established? Because I think that's something we have to consider as well. Well, exactly. And that was the premise on which Judge Hilton granted the motion to dismiss, that the right was not clearly established. Would a reasonable police officer, well, part of the evidence that a reasonable police officer would not have known to do this was the issuance of the warrant and was the direction by the Commonwealth's attorney. That's one factor or two factors to consider. It's not clear. In the absence of the warrant, would you be arguing for qualified immunity? In the absence? I can't imagine a situation where... If the officer did this on his own, without going to the prosecutor or without going to the judge, you wouldn't be arguing this. No. So the whole thing, your whole thing is premised on the fact that the Commonwealth's attorney and the judge were in the middle of it. It's heavily premised on that. Well, the whole thing is, you just said without the warrant, you wouldn't be arguing qualified immunity. I wouldn't be, because there would be no arrest at this point. The police officers come and say, we get them in here all the time, but would they do things without warrants? Yes. I talked about that. And they claim there's exceptions to warrant situations. A lot of them. There's a big list of them. And then they come in and go, we didn't get a warrant. We didn't have time. We were chasing the culprits and went in the house and we stopped the car. There's an automobile exception. There's exigent circumstances exceptions. But there ain't none here. No, sir. Right. Your case depends on the Commonwealth's attorney involvement and the judge involvement. Yes. And the facts state in there. I interrupted you. You were answering Judge Meenan's. You better fix that up. I'll try. I will try. There are a lot of cases that we both cited about genitalia and situations, whether it's a juvenile, whether it's an adult. And there are a number of cases where, yes, photographs of particular individuals' private parts have been deemed constitutional. Let me ask you about that. Because you mentioned Judge Hilton's order, and I certainly respect Judge Hilton. He did, in his order, he did recite the fact of the manner in which this search warrant was executed. That is, that when they arrived at the detention center, that the police officer directed the plaintiff to use his hand and manipulate his penis so that plaintiff could stimulate an erection. Then he goes on to describe more about what happened. But when he gets to the legal conclusion of his order, all he says is that at the time of the incident, it wasn't clearly established that Detective Abbott would violate plaintiff's constitutional rights by taking photographs of plaintiff's penis. Well, there's no dispute about that. That's clear. The question is, and the cases that he cites I don't think are controversial at all with respect to taking pictures for investigative purposes. But the question is whether or not the manner in which this warrant was executed, that is, the manipulation of the defendant's, of the minor's penis, the request that he obtain an erection, whether that somehow makes this case different. And I say to you that the affidavit that the detective completed very specifically said he was seeking to photograph the plaintiff in this case, Mr. Sims, in the same position as was depicted in the photographs obtained from his phone and from the suspect's phone. And there's no question that the photographs obtained from the phone are child pornography. That is based on the disposition of the case. So to replicate that, it's no secret he was seeking to take pictures of him with his hands on his male organ. That's also based on the other documents that are in the file, that are in the juvenile court file. So it's a question of should he have known that that was unreasonable to go in and say, we have photographs of the suspect with his hands, his organ, his body in this area. Should he not have asked for that? But he did ask for that. We need that to replicate what's in evidence, what we have already. And that's understood. So I don't see any clearly established law. He certainly wasn't touching Mr. Sims himself. He wasn't directing anyone else to touch him. Does it fall in between some of these cases? The nature of the intrusiveness, that's what we're talking about, the nature of the intrusiveness. No, asking the young man to touch himself, to put his organ in the same position as depicted in the photos. That is not clearly established that it would violate this young man who's going to be 18. Yes, he's a juvenile. But the age is significant, too. Our case is also clear that you don't need a case directly on point sometimes to establish a constitutional violation. Why isn't this just so obviously violative of someone's rights without needing to point to a particular case? Because they're trying to show him in the same position the photographs that were already obtained. That gets back to my earlier question. How far can an officer go? It sounds like under your theory that if this minor had in fact inserted something in his rectum, that the officers would have been free to compel him to replicate that act. No, that would be akin to the cases where they wanted to surgically invade somebody's body. I'm sorry. I didn't mean to interrupt your answer. No, no, go ahead. You have a question. What if they, instead of having a picture of his erect penis, they had a picture of him on the phone engaging in sexual intercourse with a woman? Okay. And so they want him, did the magistrate issue a warrant for him to engage in sexual intercourse so they could see his body? No. If they had a picture of his body moving in a video? No. Why not? That's not what. Why is that different? That would go to those line of cases that involve intrusiveness on the body, and besides, another person would be involved. That would go to something that wouldn't really necessarily involve having to identify the person. Right, but they were requiring that he achieve a state of sexual arousal, were they not? No, because the warrant that he actually sought did not ask for that. Well, he, the warrant issued. The warrant issued says this includes a photograph of the suspect's erect penis. Yes. That's what it says. It does say that. And there's a discrepancy between the warrant and the affidavit. Yes, sir. Well, but the judge, the author has to comply with the warrant. He doesn't have to comply with it. It's not the affidavit that he complies with, he complies with the warrant. It says you're commanded in the name of the commonwealth to do these things, day or night. He has to comply with the warrant. So they were requiring him to take action to incriminate himself, weren't they? No. The allegations are not specific enough. Just like Judge Hilton said, they haven't pled sufficient facts that the detective and the other two officers present were actually having him masturbate, were actually having him. They say presumably they were trying to, and they were, I see that my time is up, and they were unsuccessful. You can treat that red light like I told her to treat the red light. That is, ignore it. There's all. Only so long. As long as you get questions, we want answers. They don't go so far as to plead that he was actually trying. That's the second warrant that he went for. That's the second warrant where. They're supposed to get a photograph of his erect penis. Well, that's why detective. How are they supposed to do it if it's not to require him to perform a sexual act on himself? The warrant was issued with that in there. But I would impliedly indicate that they could do whatever was reasonable to get him to comply with the warrant. But Detective Abbott, it is not alleged, actually tried, did have him do things to have his penis erect. I don't know that detail of it, but I know what, I've got the warrant in front of me and I know what they say. Yes, sir. But it says it could, impliedly, because he says this includes as a separate sentence. It's not in the middle of the thing. It's a separate sentence at the end. This includes, specifically includes, I guess, a photograph of the suspect's erect penis. That's what it says. And presumably if he... Has he had the warrant signed by the judge? Yes, it is. But this goes to... Do you call them judges up there when you go in the courtroom? These magistrates, by the way? I have luckily never appeared before a magistrate. You're a big case lawyer. No, no. Somebody has to go before them. If you go before a magistrate, you're being arrested for something, hopefully. They don't have judges in there? They don't have lawyers in there? Yes. I have never even, I don't even know where they are in the courthouse. They don't... Lawyers never go to the magistrates? Well, some do, I guess. There's a lot of them over in West Virginia. They've got lawyers all the time. And they call them all judge. They have justices of the peace. And we call them judges. Sometimes we call them justices. But none of them... I think they required that they couldn't have more than an eighth grade education. That was the restriction, probably. Couldn't have more than. But none of them ever were even purported to be lawyers. But we called them all judges and justices every day. And I practiced before them. It's not because I'm a big case lawyer. It's just that I don't do criminal law. And I'm not a criminal. Did you represent the Commonwealth's attorney, too? No. He was represented by a different counsel. Yes. You're able to throw off on him if you want to. I'm trying to. I'm glad he's not here, actually. Because I would argue that everything alleged against him benefits my client. It was not he. But the last question posed was... I forget. But it had something to do with... I was going to argue something very persuasive. I know. This goes to the argument... A number of questions were asked. Can the officer, if there is something in the warrant that is unreasonable, is it required to do that? And there were several questions asked about that. The facts do not allege that that's what my client was doing. The facts imply... Presumably, they were trying to do this. Presumably. But my client's initials are on that part of the affidavit that crossed out erect penis. And then you have... Those initials aren't dated. We don't know when that was done. Well, these are certified records from the court. There you go. That helps. Right. These are records from the court. That helps. That indicates it was done before he presented. Yes, sir. Yes, sir. And then you have the issue of the second warrant, which we haven't even talked about. And then the pornography. But I argue the case law... Qualified immunity applies to all of it. The case law and the bowling about the pornography. That clearly it's not established law that's taking this picture. And you made this motion, right? That was granted? Yes, sir. Lots of times these lawyers move for summary judgment on qualified immunity. And that's what's granted. But here you moved to dismiss on qualified immunity. And so this case was dismissed. Does that make any difference? Well, the case law says you should... Summary judgment's always one of the merits. And sometimes dismissal's not. Yes. But in this case, by agreement, we obtained the juvenile court record. And the case law says qualified immunity can be... Should be raised at the first available opportunity. Because the whole point is to avoid someone... I agree with all that. But a lot of times the lawyers move for summary judgment immediately on immunity. Yes. They want a judgment on the merits in the case. Yes. For their officer or the judge. Common law's attorney. He was sued here, too. Yes. He got out on absolute immunity. Yes. But a lot of times they move for... And I'm getting off on a tangent here. But lots of times the lawyers move for summary judgment rather than dismissal. They want summary judgment right up front. And that's what they call it. And you didn't. You just asked for dismissal. Which is dismissal in my experience, lots of times, will give the plaintiff an opportunity to amend. You're claiming they didn't say right enough stuff in there to complain. And you get dismissal early on. There's a... They can come in and file another amendment to complain. It's not over with on the merits. But summary judgment's over with on the merits. This was a dismissal. It's been treated as on the merits, I think. He's clearly here. But that's the way you proceeded. Yes. And I did so based on the allegations. And he did amend twice before the second amended complaint. Did you say it's on the merits? Yes. Is that ever in here, the merits? Prejudice? Is it dismissed with prejudice? Yes. Is that in here somewhere? It's... It's not in the order, is it? Well, it's... It should be. It just says dismissed. It's not without prejudice. It's a dismissal with prejudice. Somebody phrased that. But I just... I'm raising the point that you didn't ask for summary judgment. You asked for... No. And I did that based on the allegations. We've had a lot of them where they ask for summary judgment. On immunity. And on qualified immunity, I'm specifically talking about. Yes, sir. And if I... I've got opinions on that, about what that means. Well, that was the purpose of obtaining the agreement for the record. These records on the juvenile court case. And it's to avoid the expense of going forward on the... Throughout discovery, which is the most expensive part of the case. Okay. We appreciate it. It's hard to keep you so long. Mr. Glasberg. Did I mispronounce that? No, you have it right, sir. Thank you very much. And it's good to have you here, sir. Thank you, sir. You're going to explain it all to us. One point. I wonder if it would be here if Trey Sims were his girlfriend. Counsel repeats that we did not allege that it was the concern of the officer to have Trey simulate masturbation. I would ask you to look at page 27 of the regular appendix, paragraph 25. Detective Abbott sought to fulfill his and Mr. Richardson's intent to have Trey photographed as though masturbating in the allegedly pornographic sex, as in the allegedly pornographic sex he sought to replicate in the photographs. There isn't any question about the sufficiency of the allegations. The question is whether, in the view of the judiciary, they're sufficient to state a claim and to overcome immunity. I would like to address two issues. First is the issue of the warrant, sir, that you have focused on, Judge King. And then I would like to say a couple of words about the points that Judge Keenan was making. I would submit to you that there are three problems with the warrant. First, they're distinct. They are distinct. There are a whole lot of things that the warrant required. We have no problem with any of them. This kid committed something that was charged as a crime under Virginia law. They wanted stuff from his computer. They wanted photographs of his hands, whatever. They wanted whatever they wanted. The warrant directed the photographing of his erect penis. We respectfully submit that that was outrageous, unconscionable, and impermissible. That is ultimately your call. And this is one of those cases where Judge Posner said in that decision, which he said, just because there's never been a case where social workers took a kid and sold them into slavery, doesn't mean that if somebody did that, there wouldn't be a 1983 claim. I submit to you that this is not permissible behavior. What is the clearly established constitutional right that that contravenes? I would say twofold, sir. The first is statutory. What I ask you about... Go ahead. But it's important, Judge, because it's not only constitutional. Almost like my law firms. I ask them questions and they don't answer. They answer some other question. No, Judge. So I ask the question, I expect lawyers to answer the question. First. The constitutional right is the constitutional right to the integrity of the body, of the person. And there is no more significant application of that right than in sexual organs, than in sexual organs of juveniles. And here it's on steroids, Judge, because the man is being directed, the boy, is being told to engage in sexual behavior. That would suggest that simply taking a picture of his penis would have violated his constitutional rights. Is that your position? I don't think I have to reach that, Judge. Is that your position? If the purpose of the photography was to mimic the erect penis, then it wouldn't be consistent with the direction of the warrant. No, no, no. Just take a picture of the kid's organ. If there were a valid reason for that, Judge, I don't think that would be unconstitutional. So there's probable cause. Would you substitute probable cause for valid reason? You said there's a valid reason. The Constitution talks about probable cause. Yes, there has to be probable cause to take that kind of picture. The probable cause they had was this. They have a photograph of an erection. And they want to take another photograph to compare with it. So if that is what they were going to do, and it was deemed a permissible intrusion, then they could do that, but they didn't have the erection. Would it make any difference if the police officer had directed Sims to go into a private room and take his cell phone and photograph his erect penis? Would that have mattered? Judge, I cannot accept that as being constitutionally sufficient under our order of law. There are no circumstances. I have to take this position. It's not only a question of law. It is my view. And I respectfully submit that that is what our system of ordered liberty requires. Judge, I'm saying in answering the question that I've posed to you, you're saying it wouldn't make any difference if they had sent him into a private room. No, it would not. They were still requiring him to do it. That's correct. You cannot do that. Period. And that should have been known going in, and then when he appeared... Been known by the officer? By the officer, by the prosecutor, by the magistrate. Respectfully, Judge. By the law, and the officer had no obligation to comply with the search warrant. He had every obligation to comply with every aspect of the search warrant, which he did. He got all sorts of evidence. We're complaining about one, if you will, modest portion of that search warrant. We have no problem with the search warrant. We have a problem with taking a 17-year-old kid and having him engage in sexual behavior, which, by the way, then is photographed on the guy's personal cell phone. And please recall that there are allegations in the complaint. There was no discovery in this case. Nobody said there was discovery. What happened was this, Judge. Counsel sought the entire juvenile record. I had no problem with that, frankly. I didn't think it was relevant to any of the issues that we were bringing. So we agreed. They got the juvenile record with our permission, with our agreement. And it's all before you. We didn't take a single deposition. There isn't any discovery of the conventional sort here. There is the juvenile record that you have. That's one of these qualified immunity claims. Well, Judge, that's exactly the case. We would like discovery. Please keep in mind, this police officer... protects officers, prosecutors, judges, from discovery. When and what they have done is reasonable. That's what the immunity claim is all about. That's why we have them up here early lots of times. Because it's there to protect these public officials so they can do their jobs. Here we have an officer... I'm not talking about what you're raising here. Here we have an officer who blew his brains out upon being served with warrants for... So is that pertinent to this? Well, it is pertinent to the statutory claim. The question of production of child pornography. I don't think it's pertinent to the constitutional claim. I think that's an objective determination and a sense that you have of what is permissible and what is sufficiently outrageous that you as judges have got to say, you can't do this. Are these claims a package deal? In other words, you could find one or the other. I think that they are... Which one is the better claim? If you're going to find one or the other. I'm going to duck that question. No, you're not allowed to duck. I'm here to answer our questions. I didn't say that jokingly. Okay, fine. Which one is the better claim? I think the clearest one is the statutory claim. The clearest one is the statutory claim. Because what they did was compel this boy to engage in sexual activity in what they contended was pornography. Where is the lascivious intent? Where is the evidence of lascivious intent? That's where the officer's suicide directly comes into play, which is why I say... We have no discovery, Judge. I have no idea. You're asking where is the evidence of lascivious intent? I have no evidence because I have no discovery. I can only tell you that what we pleaded in the complaint was that in addition to having the sanction of the magistrate and of his prosecuting attorney, he had his own interest. So that he proceeded to... He took these photographs, and it's alleged, on his personal cell phone. It's obscure. It remains to be fleshed out, which is why these issues should be decided on summary judgment. Because then we have a chance to establish what the facts may be and understand what their motivation was and what exactly did come down. Also keep in mind, please, both the chief of police and the prosecuting attorney, the commonwealth's attorney, they said this is outrageous. In fact, he said he didn't believe it happened. That was after he'd gotten a Piper's or something. Well, Judge, I've done a number of these cases, and it's a... They had an unlawful affair. It's rather rare when these authorities do not stick up for their officers. I'm not faulting them. I'm saying that the... How is that relevant? In terms of what is reasonable behavior on the part of the officer, we have to establish, in order to deal with the question of qualified immunity, not only that what he did was wrong, but that he should have known and any reasonable officer would have known. And if his own police chief and the commonwealth's attorney will publicly declare, not even privately, publicly, disclaiming that this was a proper thing to do, I would respectfully submit that that is something that can be discovered. It's evidence, objective evidence of unreasonableness. Yes, Judge. Absolutely it is, Judge. May I ask a question? I'm trying to figure out where to draw the line here. The cases seem to be clear that an officer can take a photograph of someone's sexual organs for legitimate investigative purposes. So, let's say that in this case, instead of the fact that you had an erect penis, the evidence showed that the boy had some kind of a marking or tattoo on his penis that could be easily identified. And the officers go and seize him, require him to drop his pants, and then ask him to manipulate his penis in a manner that the tattoo becomes visible. Is that a violation? The case law involving adults supports the notion that genitalia can be photographed if there is an identifying mark that is sought to be observed. There is no case involving a juvenile, and the protections that adhere to the status of being juvenile would urge caution with regard to immediate application of the adult rule. But more importantly, there is no such allegation here. There is no allegation that there was something unique that they were looking for. Well, the allegation was that this was an erect penis, which in the normal course of things is maybe unique. Well, may I say, Judge, that as part of what I had started working up in the case before it was dismissed, I mean, this is a bizarre case, was getting a urologist to provide testimony on these kinds of things. I'm not clear on the sufficiency. Is it then, it's not so much the manipulation here then, it's the intent of the officer? No, the intent informs what happened, but it's certainly the manipulation. I would say three things. Number one, it's getting the warrant. The statutory claim, doesn't it? Absolutely, yes. Absolutely for the statutory claim. First, there's a question of seeking the warrant. Second, there's a question of proceeding with the photograph because the penis isn't erect. That's not what he was told to do. Now, so you're asking me, okay, go in there and look at Playboy magazine and then come out. That's not this case. I don't know what I would do under those circumstances. He was told to take a photograph of the erect penis. There was no erect penis and he told the guy, you know, mess with yourself so we'll make it look like that. So that's the second thing. He did not do, in that particular only, sir, he did not do what the warrant said. What do you mean? What did he not do? He didn't take a picture of an erect penis because there wasn't one. He wasn't able to comply with that part. That part of the warrant wasn't complied with. The officer, am I right or wrong, that aspect of the warrant was not complied with. That's correct. Not only was it not complied, In the return it says photos, it's vague. It just says photos. Yes, exactly. And they knew it. They knew that it was insufficient. That's why they made the threat. Why they made the threat? They made the threat because they knew that they couldn't use these pictures. And he had to know he couldn't use these pictures. The threat was from the prosecutor It had to be the lawyer. He has no capacity to speak to the boy. Right. But the threat was made by the officer. By the officer. What did he say to the lawyer? He said if he doesn't produce an erection we're going to take him to the hospital and inject him. But he never did do that. He didn't do it, Judge, because defense counsel, after he couldn't dissuade him, went to the press and I am advised, I don't know this myself, to the detention system because they got so many calls. They totally backed off it. And that also goes, if you will, to the reasonableness and the constitutional standard. So first it's applying for the warrant. Second is taking the photographs when the penis is not erect so he's not doing what he was directed  And by the way, they are called magistrates and most of them I believe are in the detention center. But their offices are in the jail, not in the... They don't have a courtroom. No, they do not. You ever appear before one of them? You've been around a long time. Yeah, but I don't do criminal work either, Judge. And you never went to a magistrate court? Judge... You're a big case lawyer too. No, no, no, Judge, I am not a big case lawyer, but they don't really have courts, Judge. It's like a bank teller. I've been doing this, I don't know, 40 years. I've had one case in which a police officer said that he had a warrant that was not granted. One case, and I've been doing police abuse work for a whole... Had a warrant that was not what? Granted. Oh, you mean a search warrant or arrest warrant? Any warrant. Any warrant. So you would say they're all rubber stamps? Well, Judge, I don't want... You say they're not really... Judge, I'm not asking you to make... You want us to take you as an expert witness that they're not neutral and detached judicial officers in Virginia. And I don't know that we're going to get around to doing that. No, no, I'm not asking you to do that, Judge. That would be disrespectful of magistrate judges. That's what you just said. No, what I said was that in deposing... Most of them are trying to do their job. I perfectly accept that. I absolutely accept that. And so did the Supreme Court in Malley v. Briggs accounting for the fact that they can still make mistakes. But because some people in our system have immunity, I mean, if everybody has immunity, then what happens? Well, we have immunity here as judges, but then it's necessary for the system to work. I don't have any complaint, and we did not appeal... You have to be able to make decisions without fear that you're going to sue us. Judge, we did not appeal... A personal liability. We did not appeal the dismissal of the prosecutor. I understand that. I thought we had a chance. It was denied. So be it. I understand that. I respect that. I want to return once, if I may just finish, on the statutory claim. Go right ahead. This boy is charged with creating pornography. The officer then proceeds to duplicate or attempt to duplicate exactly what he's charged. How long before the search warrant was the boy charged? If I recall correctly, he was charged initially six months earlier. He was charged six months earlier, then he was put on homebound detention for six months. Let me take this opportunity because it's an important point. I want to make sure that you have it straight because I don't want there to be any confusion about it. We do not make any contention that the officer misrepresented anything with regard to securing the warrant for taking the photograph. He did what he did. We have no contention that anything he said was wrong. Under the Virginia detention order for juveniles, you can be seized and put under temporary detention for one of two reasons only. Risk of harm to yourself or others. Risk of flight. This is a boy who after his initial arraignment in January was put on homebound detention for half a year. He was then charged the second time. I didn't know my question was going to get into all this. He was taken for one day into detention. He was taken for one day in detention, the photographs taken, and he was left out. The decisions were made by the officer to procure the warrant permitting him to be taken to the detention center. That is part of the execution of the photography warrant. That is not the search warrant. That is the warrant that permitted the photographs of his penis to be taken place. The search warrant was otherwise fully executed in his home. We have no complaint about that. The problem is what they did was take this bogus temporary detention order, brought him to the detention center, three armed guards saying take down your pants and fondle yourself, take pictures, and bring him back. Thank you, Judge. Thank you very much. We appreciate very much the arguments of counsel. We're going to adjourn court until 8.30 tomorrow morning and come down and greet counsel. Court is adjourned until 2 p.m. this afternoon. God save the United States and this honorable court.
judges: Robert B. King, Barbara Milano Keenan, Albert Diaz